# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| ASHLEY EMBLETON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) CASE NO.:  4:20-cv-216 |
| vs. | ) |
| | ) |
| SUNMAN-DEARBORN | ) |
| COMMUNITY SCHOOLS, | ) |
| | ) |
|     and | ) |
| | ) |
| THE SUNMAN-DEARBORN | ) |
| COMMUNITY SCHOOLS BOARD OF | ) |
| EDUCATION, MICHAEL NORMAN, | ) |
| JAMES GRAF, DAWN BURKE, | ) |
| ROBERT DAVIS, GARY GELLERT, | ) |
| SARA HYLTON, and GLENN SCHOLL, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by counsel, files her complaint for damages suing Defendant, Sunman-Dearborn Community Schools (hereinafter "SDCS") and The Sunman-Dearborn Community Schools Board of Education, individually and severally, (hereinafter "SCDS Board") as follows:

This action is for damages to redress Defendant SDCS's unlawful gender, female, discrimination and retaliation against Plaintiff, Ashley Embleton (hereinafter "Embleton"), in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq,* as amended. Embleton sues Defendant SCDS Board and its members Michael Norman, James Graf, Dawn Burke, Robert (Scot) Davis, Gary Gellert, Sara Hylton, and Glenn Scholl, severally and

1

individually, for negligent supervision of Superintendent Dr. Andrew Jackson. All Board member Defendants are sued in their individual and official capacities.

Embleton seeks all damages permitted under the law, including but not limited to actual damages plus allowable interest, both backpay and front-pay, as well as compensatory damages for emotional harm and humiliation from the discrimination by Defendant. Embleton also seeks punitive damages for the intentional and wanton disregard of her civil rights by Defendant along with reasonable legal fees and costs.

## JURISDICTION

1. The Court has jurisdiction over this proceeding pursuant to *42 U.S.C. §2000e-5(f)(3)* (Title VII).

2. In addition, jurisdiction is invoked pursuant to 28 U.S.C. §1331.

3. Jurisdiction is also invoked pursuant to 28 U.S.C. §1343.

4. The Court has supplemental jurisdiction to try Embleton's state law claims pursuant 28 U.S.C. § 1367.

5. Embleton has satisfied her obligation to exhaust her administrative remedies as required under 42 U.S.C. §2000e et seq., by timely filing a charge of discrimination, EEOC Charge Number 470-2020-03170 (dated July 14, 2020),

6. The EEOC issued Embleton its Notices of Right to Sue, which Embleton received on August 11, 2020. Embleton files her suit within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

7. Embleton resides in Dearborn County, Indiana.

8. Defendant SDCS is located in Dearborn County, Indiana.

9. Defendant SDCS Board is located in Dearborn County, Indiana.

10. At all times relevant to this cause of action, Defendants SDCS and the SDCS Board were conducting business in Dearborn County, Indiana.

## STATEMENT OF FACTS

11. Embleton incorporates by reference paragraphs 1 through 10 above.

12. Embleton was hired by Defendant in 2012 as a substitute teacher.

13. Embleton has taught in numerous substitute teaching positions within the SDCS school district since her hire.

14. In August 2018, the Principal of Bright Elementary School, Ms. Kelly Roth (hereinafter "Roth") spoke to Mrs. Rebecca Lail, a first-grade teacher at Bright Elementary School, regarding Embleton. Roth told Mrs. Lail that Embleton was an outstanding teacher. Roth also told Mrs. Lail that Roth had observed Embleton substitute teaching in various classrooms at Bright Elementary School in the past, and said that she wanted Embleton to teach at Bright Elementary School again in the future. Roth did not specify whether her desire to have Embleton teach in her building was for a substitute or permanent teaching position.

15. Roth informed Mrs. Lail that there was a teacher at Sunman-Dearborn Middle School who was planning to take maternity leave in September of 2018. Roth told Mrs. Lail that Roth would call the middle school principal, Mr. Matt Maple, to recommend Embleton for the position.

16. Mr. Maple then emailed Embleton, and asked her to call him on the phone or speak to him in person about the position if she was interested in it.

17. Roth also told Mrs. Lail that there would be a temporary teaching position at Bright Elementary School opening in January of 2019; she said that Embleton would be perfect for the position and expressed enthusiasm for Embleton's ability to go from the middle school position back into a position at Bright Elementary School.

18. Embleton accepted the substitute teaching position at Sunman-Dearborn Middle School of paragraph 13. She performed in the position from September 4, 2018 until December 21, 2018.

19. When the position described in paragraph 13 was coming to an end, Embleton applied for the substitute teaching position described in paragraph 15.

20. Embleton did not receive any communication from Roth after she submitted her application, so she followed-up with an email to Roth. Roth responded by claiming that she had never received an application for the position from Embleton.

21. In response to Roth's assertion, Embleton sent a copy of the application, complete with a "sent date" time stamp, by email to Roth.

22. Around the week of December 3, 2018, Roth called Embleton and left a voicemail, in which she stated that she did see that Embleton applied for the position and asked her to come in for an interview.

23. On December 13, 2018, Roth conducted a sham interview of Embleton; Roth did not ask Embleton any genuine interview questions or inquire about Embleton's then-current position at the middle school described in paragraph 13. Instead, Roth, who previously said that Embleton that she would be perfect for the position as described above, told Embleton that she was still thinking about who she wanted to hire for the interim position.

24. Roth then told Embleton that she "wanted a man in the building."

25. Embleton then asked Roth if this statement was intended to indicate that Embleton was not going to receive the position. To this, Roth responded that she needed to think about it and said that she would let Embleton know to whom she would ultimately give the position. In response, Embleton rhetorically asked why she was not being actively interviewed, to which Roth told her that she already knew Embleton and knew that Embleton would perform in the position well. Roth then cut the "interview" short and told Embleton to go tend to her students.

26. About a week after Roth's sham interview, Embleton emailed Roth inquiring as to the status of the Spring semester 2019 position because Roth had not contacted Embleton regarding whether she was selected for the position.

27. In response to Embleton's email, Roth called Embleton and left a voicemail indicating that she would like to "chat" about the status of the position. Embleton was uncomfortable with this, as she wanted to document all communications in writing, and she became suspicious of Ms. Roth who would not communicate with her in writing regarding the status of her selection decision for the position.

28. On or about December 14, 2018, Roth sent Embleton an Instant Message on SDCS's Google Hangouts asking Embleton to call Roth; this is an exceedingly atypical manner of discussing matters such as employment positions, as principals do not use Instant Messages to communicate with subordinates regarding the status of interviews.

29. In the meantime, Roth had asked Mrs. Lail, Emblton's mother, to tell Embleton to call Roth regarding the position.

30. Embleton once again emailed Roth, requesting Roth discuss her selection for the position in writing.

31. On or about December 19, 2018, Embleton used the SDCS Google Hangouts Instant Message system to complain to Roth about Roth discriminating against Embleton due to her sex, female, since Roth said she "wanted a man in the building" during Embleton's interview.

32. The individual that Roth hired for the teaching position in place of Embleton was a young male applicant, who had no prior teaching experience.

33. On or about December 20, 2018, one day after Embleton complained of sex discrimination, Mary Ann Baines, Director of Financial Operations, informed the Defendant's school principals by email that Embleton was no longer included in the school's pool of substitute teachers, and Embleton's name would soon be removed from the substitute teacher list.

34. On or about December 28, 2018, Defendant through the directive from Superintendent, Dr. Andrew Jackson, removed Embleton from its substitute teacher list.

35. On or about August 9, 2019, Embleton filed a charge of discrimination with the EEOC alleging sex discrimination.

36. SDCS has never called Embleton to substitute teach for any other position.

## COUNT I
### (Retaliation, Title VII - SCDS)

37. Embleton incorporates by reference paragraphs 1 through 36 above.

38. On or about December 19, 2018, Embleton engaged in a protected activity under Title VII when she complained to the SDCS's administration about sex discrimination.

39. Upon information and belief, Roth notified Superintendent Dr. Jackson and Director of Financial Operations Mary Ann Baines of Embleton's December 19, 2018 complaint of sex discrimination.

40. On December 20, 2018, the day after Embleton complained to SDCS administration of sex discrimination, SDCS retaliated against Embleton when Baines informed the Defendant's school principals by email that Embleton was no longer included in the school's pool of substitute teachers, and Embleton's name would soon be removed from the substitute teacher list.

41. On December 28, 2018, SDCS further retaliated against Embleton when Dr. Jackson ordered that Embleton be removed from SCDS's substitute teacher list.

42. On or about August 9, 2019, Embleton filed a charge of discrimination with the EEOC alleging sex discrimination.

43. SDCS has continued to retaliate against Embleton in that it has not offered her any other substitute teaching positions.

44. Wherefore, Embleton requests the Court grant judgment against Defendant SDCS and grant all relief she is entitled to under the law.

## COUNT II

### (Negligent Supervision – SCDS Board)

45.  Embleton incorporates by reference paragraphs 1 through 36 above.

46. The SCDS Board and its members, individually and severally, committed negligent supervision when it failed to protect Embleton against Superintendent Jackson's against retaliation.

47. As the governing body of Sunman Dearborn Community Schools and as the supervisory authority over Dr. Jackson, the Board, individually and severally, owed a duty to Embleton to protect her against retaliation from any and all Sunman Dearborn Community School officials, including, and especially, the Superintendent.

48. However, the Board breached its duty to Embleton by negligently failing to exercise its supervisory responsibility over Dr. Jackson by warning him, under pain of discipline, to avoid retaliating against Embleton in any way.

49. December 28, 2018, Dr. Jackson retaliated against Embleton when he removed Embleton from SCDS's substitute teacher list approximately nine days after Embleton complained of Discrimination.

50. After learning that he had removed Embleton from the substitute teacher list, the Board also negligently failed to supervise to Dr. Jackson by directing him to reinstate Embleton to the substitute teacher list and to direct Dr. Jackson to inform building administrators to assign Embleton to substitute positions as they had previously done.

51.  Embleton suffered legal and emotional damages as a result of the Board's negligent supervision of Dr. Jackson when it took no action to protect Embleton against Dr. Jackson's intentional retaliation against her.

52. Wherefore, Embleton requests the Court grant judgment against the SCDS Board and grant all relief she is entitled to under the law.

## RELIEF

WHEREFORE, Plaintiff requests judgment in her favor against Defendant and that the following be awarded:

a. Back pay and other consequential damages resulting from the intentional discrimination and retaliation against Embleton;

b. Award Embleton damages permitted under Title VII related to Defendant's sex discrimination and retaliation;

c. Award Embleton the costs of this action including reasonable attorney's fees with interest, and any other such relief as the Court may deem just, proper, and equitable;

d. Grant injunctive relief in the form of placement into any future substitute teaching positions available at SDSC; and

e. Grant such relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues and question so triable.

Respectfully Submitted,

/s/ Tae Sture_____
Tae Sture, Attorney No. 25120-29
Attorney No. 25120-29
Counsel for Plaintiff
Sture Legal Services
155 E Market Street, Ste. 501
Indianapolis, IN 46204
Ph: (317) 577-9090
Fax: (317) 577-1102
Email: tae@sturelaw.com